UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARIA LUISA GARZA,

                    Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

                  Defendant.

NO: 1:14-CV-3196-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary

judgment (ECF Nos. 17, 21).  This matter was submitted for consideration without

oral argument.  The Court—having reviewed the administrative record and the

parties' completed briefing—is fully informed.  For the reasons discussed below,

the Court grants Defendant's motion and denies Plaintiff's motion.

///

///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

1    court "may not reverse an ALJ's decision on account of an error that is harmless."

2    *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate

3    nondisability determination."  *Id.* at 1117 (internal quotation marks and citation

4    omitted).  The party appealing the ALJ's decision generally bears the burden of

5    establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

6                    **FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

7            A claimant must satisfy two conditions to be considered "disabled" within

8    the meaning of the Social Security Act.  First, the claimant must be "unable to

9    engage in any substantial gainful activity by reason of any medically determinable

10   physical or mental impairment which can be expected to result in death or which

11   has lasted or can be expected to last for a continuous period of not less than twelve

12   months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

13   impairment must be "of such severity that he is not only unable to do his previous

14   work[,] but cannot, considering his age, education, and work experience, engage in

15   any other kind of substantial gainful work which exists in the national economy."

16   42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

17           The Commissioner has established a five-step sequential analysis to

18   determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

19   404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

20   considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income, dated June 14, 2011, alleging a disability onset date of January 31, 2008, in both applications. Tr. 176-82, 183-88. These applications were denied initially and upon reconsideration, Tr. 108-10, 111-14, 119-23, 124-32, and Plaintiff requested a hearing, Tr. 133-34. A hearing was held with an Administrative Law Judge ("ALJ") on March 21, 2013.[1] Tr. 41-61, 156, 166. On May 1, 2013, the ALJ issued a decision denying Plaintiff benefits. Tr. 16-40.

---

[1] Although the hearing transcript states the hearing was held on March 1, 2013, Tr. 41, the Notice of Hearing, Tr. 156, Reminder Notice of Hearing, Tr. 166, the ALJ's decision, Tr. 19, and Plaintiff's brief, ECF No. 17 at 2, all identify the hearing date as March 21, 2013.

As a threshold issue, the ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through September 30, 2008. Tr. 21.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 31, 2008, the alleged onset date.  Tr. 21.  At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, fibromyalgia, anxiety disorder, and affective disorder.  Tr. 22.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23.  The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift 20 pounds occasionally and 10 pounds frequently, and stand and/or walk and/or sit for six hours in an eight-hour day or any combination thereof. She can perform frequent, but not constant overhead reaching. She is capable of frequent bilateral feeling. She should avoid concentrated exposure to cold, hazards and vibration. She is limited to simple, repetitive tasks with superficial contact in the workplace and no collaborative work.

Tr. 25.  At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 33.  At step five, the ALJ found—considering Plaintiff's age, education, work experience, and RFC—that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as assembler, housekeeping cleaner, and hand packager. Tr. 34.  In light of the step five finding, the ALJ concluded that Plaintiff was not

disabled under the Social Security Act and denied her claims on that basis.  Tr. 35-36.

The Appeals Council denied Plaintiff's request for review on October 28, 2014, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability benefits and supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff raises the following issues[2] for this Court's review:

(1) Whether the ALJ properly discredited Plaintiff's testimony; and

(2) Whether the ALJ properly weighed the medical opinions.
ECF No. 17.  This Court addresses each issue in turn.

///

///

///

---

[2] Plaintiff also challenges whether the ALJ erred at steps four and five by omitting limitations and failing to demonstrate work that existed in significant numbers, ECF No. 17 at 12; however, Plaintiff has not provided briefing on these issues, and it appears these issues are subsumed within her two other arguments.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

**DISCUSSION**

**A. Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims. ECF No. 17 at 12-21.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). The Ninth Circuit has repeatedly rejected the Commissioner's argument that a lesser standard than

1   "clear and convincing" applies. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1136-

2   37 (9th Cir. 2014) (rejecting the government's argument that the ALJ need only

3   provide specific reasons for rejecting a claimant's testimony).   "General findings

4   are insufficient; rather, the ALJ must identify what testimony is not credible and

5   what evidence undermines the claimant's complaints." *Id.* at 1138 (quoting *Lester*

6   *v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947,

7   958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with

8   findings sufficiently specific to permit the court to conclude that the ALJ did not

9   arbitrarily discredit claimant's testimony.").   "The clear and convincing evidence

10  standard is the most demanding required in Social Security cases." *Garrison v.*

11  *Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec.*

12  *Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

13       In making an adverse credibility determination, the ALJ may consider, *inter*

14  *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

15  claimant's testimony or between his testimony and his conduct; (3) the claimant's

16  daily living activities; (4) the claimant's work record; and (5) testimony from

17  physicians or third parties concerning the nature, severity, and effect of the

18  claimant's condition. *Thomas*, 278 F.3d at 958-59.

19       At step one of the analysis, the ALJ found that Plaintiff's medically

20  determinable impairments could reasonably be expected to cause some symptoms.

Tr. 27.  At step two, however, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely credible." Tr. 27.  With no finding of malingering, the ALJ needed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony.  *Ghanim*, 763 F.3d at 1163.

This Court finds the ALJ provided several specific, clear, and convincing reasons for discounting Plaintiff's symptom claims.

### 1.  Medical Evidence

First, the ALJ found the objective medical evidence did not support Plaintiff's allegations of disabling physical limitations, which limitations include pain all over from her arthritis and fibromyalgia but with the most significant pain in her hands.[3]  Tr. 27.  In support, the ALJ summarized examination findings showing normal physical symptoms:

---

[3] Within the ALJ's discussion of inconsistencies between Plaintiff's symptom claims and the objective medical evidence, the ALJ mentions that an August 2011 treatment note indicated Plaintiff had a history of noncompliance and her pain had decreased with medication.  Tr. 28.  Although these are generally permissible reasons to discount a claimant's testimony, the ALJ's mention in passing and citation to one page of treatment notes in support do not constitute clear and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

X-rays from July 2009 showed spondylosis of the cervical spine. A physical examination from July 2011 showed lumbar spine tenderness and mild pain with range of motion. Her cervical and thoracic spine were within normal limits. . . . Upon physical examination in October 2011 with her primary care physician, Dr. Byrd, the claimant had no clubbing, cyanosis or edema in her extremities. She had diffuse tenderness wherever she was touched. There was no overt evidence of active synovitis. She had a normal range of motion with her hands grip, wrist, elbow, shoulder, hip and knee. A neurologic examination showed no evidence of focal muscle weakness or loss of sensation to light touch. In November 2011, the claimant was abusing her prescription pain medications. She reported that she was taking double her prescribed dosage. The claimant returned to Dr. Byrd in April 2012 with diffuse somatic complaints. She indicated that she had had a little bit of flare of diffuse arthralgias related to some stress. She denied other sensations of numbness, tingling and weakness. X-rays of her bilateral hands and wrists showed osteopenia with no significant arthropathy or soft issue abnormality. . . . A physical examination in November 2012 was unremarkable. The claimant had a grossly normal motor and sensory exam. Her hygiene was good and she was wearing makeup, which shows some ability to use her hands and arms. At another follow up in February 2013, the claimant indicated that she still hurt diffusely with light stroking of the skin but she had not had any hot swollen joints and she felt her medication had been beneficial.

Tr. 27-28 (internal record citations omitted).

In assessing a claimant's credibility, an ALJ may consider whether the Plaintiff's self-reports are contradicted by the medical record. *Carmickle v. Comm'r of Sec. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction

convincing reasoning supported by substantial evidence for rejecting Plaintiff's symptom claims.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    with the medical record is a sufficient basis for rejecting the claimant's subjective

2    testimony."); *see also* SSR 96-7p, 1996 WL 374186, at *5. However, "an ALJ

3    may not reject a claimant's subjective complaints based solely on a lack of medical

4    evidence to fully corroborate the alleged severity of pain," the rationale being that

5    "pain testimony may establish greater limitations than can medical evidence

6    alone." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). When making this

7    finding, the ALJ must link the testimony she finds not credible to the particular

8    parts of the record supporting her non-credibility determination. *Brown-Hunter v.*

9    *Colvin*, --- F.3d ---, 2015 WL 6684997, at *1 (9th Cir. Aug. 4, 2015) (amended

10   Nov. 3, 2015) ("We hold that an ALJ does not provide specific, clear, and

11   convincing reasons for rejecting a claimant's testimony by simply reciting the

12   medical evidence in support of his or her [RFC] determination. . . . [W]e require

13   the ALJ to specify which testimony she finds not credible, and then provide clear

14   and convincing reasons, supported by evidence in the record, to support that

15   credibility determination.").

16          This Court finds the ALJ permissibly discounted Plaintiff's claims based on

17   the inconsistent medical evidence, which reason was paired with other reasoning

18   discussed below for discounting Plaintiff's credibility. The ALJ stated that she

19   found Plaintiff's allegations of physical limitations not credible and proceeded to

20   summarize the medical evidence that contradicted Plaintiff's claims of physical

1   limitations, which limitations primarily consisted of difficulty using her hands.

2   Because the ALJ adequately identified which portion of Plaintiff's symptom

3   claims were not credible based on the medical evidence, this Court finds the ALJ

4   provided a specific, clear, and convincing reason for discounting Plaintiff's

5   credibility. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th

6   Cir. 2014) ("The ALJ must identify the testimony that was not credible, and

7   specify 'what evidence undermines the claimant's complaints.'").

8               **2. Daily Activities**

9           Second, the ALJ found Plaintiff's allegations of disabling symptoms—

10  which allegations include both her physical limitations from arthritis and

11  fibromyalgia and mental limitations from anxiety—were not consistent with her

12  self-reported activities.  Specifically, the ALJ noted that Plaintiff cooks, does

13  dishes, mops, sweeps, cleans, and engages in hiking, gardening, yard work, and

14  "crafts of all sorts." Tr. 29.  The ALJ also noted that Plaintiff's 11-year old lived

15  with her, demonstrating that Plaintiff engaged in parental duties, and that Plaintiff

16  spent at least part of three days a week gathering and selling items at an outdoor

17  flea market.  Tr. 29-30.

18          "While a claimant need not vegetate in a dark room in order to be eligible

19  for benefits, the ALJ may discredit a claimant's testimony when the claimant

20  reports participation in everyday activities indicating capacities that are

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

transferable to a work setting." *Molina*, 674 F.3d at 1112-13 (internal citations and quotation marks omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113. Ninth Circuit precedent has repeatedly emphasized that general findings are insufficient to discount a claimant's self-reports. *See Burrell*, 775 F.3d at 1138 (rejecting as insufficiently specific an ALJ's general finding that the "[c]laimant's self-reports were inconsistent in some unspecified way with her testimony at the hearing").

This Court finds the ALJ provided another specific, clear, and convincing reason based on substantial evidence for discounting Plaintiff's claims. Here, the ALJ found Plaintiff's allegations of disabling symptoms, which primarily included pain in her hands from arthritis, inconsistent with her reported activities, such as engaging in "crafts of all sorts" and spending at least a portion of several days a week gathering and selling clothing, dishes, and other items and an outdoor flea market. This Court finds this explanation adequately specific for purposes of an adverse credibility finding. *See id.*

### 3.  Overall Credibility

Finally, the ALJ found Plaintiff had an "intermittent and low earnings record," suggesting that reasons other than debilitating impairments contribute to a

1   lack of full-time work contrary to Plaintiff's testimony.  Tr. 30.  In support, the

2   ALJ cited to Plaintiff's earning records, which span thirty years and show an

3   overall unimpressive work history well before the alleged onset date.  Plaintiff

4   does not object to this rationale.

5       Poor work history can provide a permissible reason to cast doubt on

6   Plaintiff's purported reason for unemployment.  *Thomas*, 278 F.3d at 959; *see also*

7   SSR 96-7p, 1996 WL 374186, at *5 (noting that "[s]tatements and reports from the

8   individual and from treating or examining physicians or psychologists and other

9   persons about the individual's . . . prior work record and efforts to work" may be

10  considered in assessing the claimant's credibility).  Accordingly, this Court finds

11  the ALJ provided a specific, clear, and convincing reason for discounting

12  Plaintiff's overall credibility.

13      In sum, this Court finds the ALJ provided specific, clear, and convincing

14  reasoning for rejecting Plaintiff's testimony.  *See Ghanim*, 763 F.3d at 1163.

15  **B.  Medical Opinion Evidence**

16      Second, Plaintiff faults the ALJ for improperly weighing the opinions of Dr.

17  Jessee McClelland, Ms. Gabriela Mondragon, Dr. Vivek Shad, and the state

18  agency reviewers.  ECF No. 17 at 21-31.

19      There are three types of physicians: "(1) those who treat the claimant

20  (treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

1    "Where an ALJ does not explicitly reject a medical opinion or set forth

2    specific, legitimate reasons for crediting one medical opinion over another, he

3    errs." *Garrison*, 759 F.3d at 1012.  "In other words, an ALJ errs when he rejects a

4    medical opinion or assigns it little weight while doing nothing more than ignoring

5    it, asserting without explanation that another medical opinion is more persuasive,

6    or criticizing it with boilerplate language that fails to offer a substantive basis for

7    his conclusion." *Id.* at 1012-13.  That being said, the ALJ is not required to recite

8    any magic words to properly reject a medical opinion.  *Magallanes v. Bowen*, 881

9    F.2d 747, 755 (9th Cir. 1989) (holding that the Court may draw reasonable

10   inferences when appropriate).   "An ALJ can satisfy the 'substantial evidence'

11   requirement by 'setting out a detailed and thorough summary of the facts and

12   conflicting clinical evidence, stating his interpretation thereof, and making

13   findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715,

14   725 (9th Cir. 1998)).

### 1.  Jesse McClelland, M.D.

16        First, Plaintiff faults the ALJ for improperly rejecting the opinion of Dr.

17   McClelland.  ECF No. 17 at 21-25.  Specifically, Plaintiff points to Dr.

18   McClelland's August 2011 consultation, in which he opined Plaintiff may struggle

19   with detailed complex tasks, have problems accepting instructions from

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

supervisors, may struggle to interact with coworkers and the public, and likely

struggle to maintain attendance.  Tr. 342-46.

  This Court finds the ALJ properly rejected the opinions of Dr. McClelland.

As his opinions regarding Plaintiff's mental functioning were contradicted, *see* Tr.

32, the ALJ need only have provided "specific and legitimate" reasoning for

rejecting them.[4]  *Bayliss*, 427 F.3d at 1216.  The ALJ provided several specific and

legitimate reasons for affording Dr. McClelland's opinion "little weight." Tr. 32.

  The ALJ found that Dr. McClelland's opinion was based largely on

Plaintiffs' subjective reports, which the ALJ found to be not credible.  Tr. 32.  An

---

[4] Plaintiff asserts that a reviewing doctor cannot contradict the opinion of an

examining or treating physician.  ECF No. 23 at 9 n.3.  However, the opinions

cited in support merely demonstrate that a nonexamining doctor's opinion cannot

*by itself* constitute substantial evidence that justifies the rejection of an examining

or treating physician's opinion.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169

F.3d 595, 602 (9th Cir. 1999) ("The opinion of a nonexamining medical advisor

cannot by itself constitute substantial evidence that justifies the rejection of the

opinion of an examining or treating physician. . . . But we have consistently upheld

the Commissioner's rejection of the opinion of a treating or examining physician,

based *in part* on the testimony of a nontreating, nonexamining medical advisor.")

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

ALJ may reject even a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports which were properly discounted. *Tommasetti*, 533 F.3d at 1041. A review of Dr. McClelland's evaluation shows that they largely reflect Plaintiff's reports with little independent analysis or diagnosis. For instance, Dr. McClelland opined that Plaintiff would struggle to interact with coworkers and maintain regular attendance due to anxiety she experiences when she leaves the house and interacts with others, Tr. 345; earlier in the report, Dr. McClelland writes that, according to Plaintiff's own statements, she has panic attacks when she leaves her house or finds herself in crowds, Tr. 342. As another example, Dr. McClelland opines that Plaintiff would suffer multiple shortcomings in the work environment due to her depression, Tr. 345; this opinion appears to be based on Plaintiff's own statements, claiming her depressive episodes last weeks or months and lead to concentration and memory issues, Tr. 342-43, as compared to the limited findings from the mental status examination.

The ALJ also found Dr. McClelland's opinion was inconsistent with Plaintiff's reported activity. Tr. 32. Specifically, the ALJ noted that Plaintiff had "been able to go to flea markets on a consistent basis, which involves getting out of her house and interacting with others, in contrast with Dr. McClelland's opinion" that Plaintiff would struggle to interact with coworkers and the public. Because an ALJ may discount a doctor's opinion if it conflicts with Plaintiff's daily activities,

*Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999), the ALJ provided another specific and legitimate reason for affording Dr. McClelland's opinion limited weight.

In sum, the ALJ provided specific and legitimate reasoning supported by substantial evidence for according the opinions of Dr. McClelland only limited weight. *See Bayliss*, 427 F.3d at 1216.

### 2.  Gabriela Mondragon, MSW

Second, Plaintiff faults the ALJ for improperly rejecting the opinion of Ms. Mondragon, a social worker.  ECF No. 17 at 25-27.  Specifically, Plaintiff points to Ms. Mondragon's December 2008 evaluation, in which she opined Plaintiff could work 1 to 10 hours per week.  Tr. 369-73.

Medical providers, such as social workers, are not "acceptable medical sources" and thus not entitled to the same deference as licensed physicians and certain other qualified specialists.  SSR 06-03p, 2006 WL 2329939, at *2 (explaining that, among others, social workers and therapists are not "acceptable medical sources"); *Molina*, 674 F.3d at 1111.  Instead, these medical providers constitute "other sources" as defined in Sections 404.1513(d) and 416.913(d). *Molina*, 674 F.3d at 1111.  "The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Id.* (internal quotation marks omitted).  Such "other source" opinions must be

1   evaluated on the basis of their qualifications, whether their opinions are consistent

2   with the record evidence, the evidence provided in support of their opinions, and

3   whether the source has a specialty or area of expertise related to the individual's

4   impairment.  SSR 06-03p, 2006 WL 2329939, at *3.

5        As Ms. Mondragon is an "other source," the ALJ provided the following

6   germane reasons for affording Ms. Mondragon's opinion "limited weight."  Tr. 31.

7   First, the ALJ found Ms. Mondragon's opinion was inconsistent with Plaintiff's

8   activities.  Tr. 31.  Second, the ALJ found Ms. Mondragon's opinion inconsistent

9   with the opinions of other evaluating doctors.  Tr. 31.  These reasons constitute

10  germane reasons for not fully crediting Ms. Mondragon's opinion.  Although the

11  ALJ erred when she noted that Ms. Mondragon's opinion was given outside the

12  applicable time period, this error does not detract from the two other germane

13  reasons the ALJ gave for rejecting Ms. Mondragon's opinion.

14             **3.  Vivek Shad, M.D.**

15       Third, Plaintiff faults the ALJ for impermissibly ignoring the opinion of Dr.

16  Shad, who, in June 2006, opined Plaintiff was not capable of performing full-time

17  work.  ECF No. 17 at 27-28 (citing Tr. 373).

18       The ALJ did not address Dr. Shad's opinion, which was provided over one

19  year before the onset date.  To the extent that the ALJ's failure to explain why she

20  assigned this opinion no weight is error, *see Garrison*, 759 F.3d at 1012, that error

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22

is harmless.  Medical opinions that predate the alleged onset of disability are of

limited relevance.  *Carmickle*, 533 F.3d at 1165.  Further, Dr. Shad simultaneously

found Plaintiff incapable of full-time work and able to start working on the date of

his opinion.  *See* Tr. 373.  Thus, it is unclear how this opinion, if given any weight

in the ALJ's analysis, would have affected the ultimate nondisability finding for

the period of time at issue.  *See Molina*, 674 F.3d at 1117 ("[W]e will not reverse

for errors that are 'inconsequential to the ultimate nondisability determination.").

### 4.  State Agency Reviewers

Finally, Plaintiff faults the ALJ for improperly weighing the opinion

evidence of the state agency reviewers, Dr. Reade, Dr. Platter, and Dr. Gardner.

ECF No. 17 at 29-31.  Regarding Dr. Platter, Plaintiff faults the ALJ for ignoring

Dr. Platter's opinion that Plaintiff's testimony was credible.  *Id.* at 29-30.

Regarding Dr. Gardner, Plaintiff faults the ALJ for failing to address Dr. Gardner's

opinion.  *Id.* at 29-30.  Regarding Dr. Reade, Plaintiff faults the ALJ for failing to

sufficiently explain why Dr. Reade's opinions prevailed over Dr. McClelland's.

*Id.* at 30-31.

As an initial matter, the ALJ began her review of the medical opinion

evidence by noting that she gave considerable weight to the opinions of the DDS

physicians and psychologists "in recognition of the fact that, unlike the other

providers of opinions, the DDS sources are experts in Social Security disability."

1   Tr. 31; *see* 20 C.F.R. § 404.1527(e)(i).  The ALJ also noted the value of their

2   opinions in assessing the residual functional capacity, especially when supported

3   by the record as a whole.  Tr. 31; *see Thomas*, 278 F.3d at 957 ("The opinions of

4   non-treating or non-examining physicians may . . . serve as substantial evidence

5   when the opinions are consistent with independent clinical findings or other

6   evidence in the record.").

7       As to Dr. Platter, the ALJ need not have accepted the credibility

8   determination of a doctor, especially a non-examining one.  Rather, the credibility

9   determination is the province of the ALJ, or trier of fact.  *Morgan*, 169 F.3d at 599

10  ("[Q]uestions of credibility and resolutions of conflicts in the testimony are

11  functions solely of the [ALJ].").

12      As to Dr. Gardner, the ALJ erred by ignoring his opinion.  20 C.F.R. §

13  404.1527(e).  Nonetheless, this failure is harmless to the ultimate disability

14  determination.  *Molina*, 674 F.3d at 1111.  Dr. Reade's opinion, which the ALJ

15  gave significant weight, is almost identical to Dr. Gardner's.  *Compare* Tr. 72-73,

16  *with* Tr. 104-05.  Indeed, the narrative portions of the opinions are identical.

17  *Compare* Tr. 72-73, *with* Tr. 104-05.  The only differences are in regard to

18  Plaintiff's abilities (1) to perform activities within a schedule, maintain regular

19  attendance, and be punctual within customary tolerances, and (2) to work in

20  coordination with or in proximity to others without being distracted by them—

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 24

whereas Dr. Gardner opined Plaintiff would be moderately limited in these categories, Dr. Reade opined Plaintiff would not be significantly limited. *Compare* Tr. 72-73, *with* Tr. 104. Ultimately, both Dr. Reade and Dr. Gardner opined Plaintiff would "perform well [with] simple, repetitive work with limited interaction with others," Tr. 73, 104, and the ALJ incorporated these limitations in the RFC, Tr. 25. Accordingly, any error in failing to address Dr. Garner's opinion, in addition to Dr. Reade's opinion, is harmless.

As to Dr. Reade, the ALJ sufficiently explained why she discounted the opinion of examining physician Dr. McClelland in favor of nonexamining evaluator Dr. Reade. As already addressed above, the ALJ provided sufficient reasoning for affording Dr. McClelland's opinion little weight. Dr. Reade's opinion, on the other hand, was consistent with treatment notes in the record and consistent with Plaintiff's daily activities.

In sum, despite Plaintiff's arguments to the contrary, the ALJ properly weighed the opinion evidence. *See Bayliss*, 427 F.3d at 1216.

///

///

///

///

///

1    **IT IS ORDERED:**

2        1.  Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

3        2.  Defendant's Motion for Summary Judgment (ECF No. 21) is

4            **GRANTED**.

5        The District Court Executive is directed to file this Order, enter Judgment

6    for Defendant, provide copies to counsel, and **CLOSE** the file.

7        **DATED** December 18, 2015.

8    

9                        THOMAS O. RICE
                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26